IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY S. KONTAXES, | ) |
| | ) Civil Action No. 19 – 568 |
| Petitioner, | ) |
| | ) |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| MARK GARMAN, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA and FAYETTE COUNTY DISTRICT ATTORNEY, | ) ) ) ) |
| | ) |
| Respondents. | ) |

# MEMORANDUM OPINION[1]

Currently pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Gregory S. Kontaxes ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 14.) Petitioner challenges his August 4, 2006 judgment of sentence imposed by the Court of Common Pleas of Fayette County after pleading guilty but mentally ill to the charges of aggravated assault, simple assault, and harassment. For the following reasons, the Petition will be dismissed as untimely and a certificate of appealability will be denied.

**A.   Procedural Summary**

By Criminal Information filed at CP-26-CR-0000197-2001, the Commonwealth of Pennsylvania charged Petitioner with two counts each of aggravated assault, simple assault and harassment arising from an incident that took place between Petitioner and his elderly parents on

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. (ECF Nos. 36 & 37.)

1

January 7, 2001.  (Resp't Exh. 18, ECF No. 24-1, pp.70-142.)  Initially, Petitioner entered a plea of guilty but mentally ill.  On December 14, 2001, a competency hearing was held to determine whether Petitioner was suffering from a mental illness at the time the crimes were committed and whether he was competent to stand trial.  (Resp't Exh. 3, ECF No. 24, pp.30-66.)  The sole witness, Dr. Laszlo Petras, Director of the Forensic Unit and attending chief psychiatrist at Mayview State Hospital ("Mayview"), testified that it was his expert opinion, expressed within a reasonable degree of medical certainty, that Petitioner was legally insane at the time of the offense.  Id., p.50.  He also opined that Petitioner was not presently competent to stand trial.  Id., pp.55-56.  Based upon this testimony, the court indicated that because Petitioner was incompetent to stand trial, Petitioner was also incompetent to waive any potential insanity defense.  Id., p.62.  Ruling from the bench, the judge rejected the plea of guilty but mentally ill since he was unable to determine beyond a reasonable doubt that Petitioner was not legally insane at the time of the commission of the offense, and the ruling was made without prejudice to Petitioner's ability to offer the same plea at a future date when he became competent.  Id., pp.63-64; see also (Resp't Exh. 2, ECF No. 24, pp.27-28.)  Thereafter, Petitioner was returned to Mayview until March of 2002, at which time he was deemed competent to stand trial.  See (Resp't Exh. 8, ECF No. 24, p.130.)  In light of his having gained competence, Petitioner filed a motion to reinstate his plea of guilty but mentally ill, but due to a misunderstanding at a hearing on June 3, 2002, at which time the trial judge reiterated the basis for his prior denial of Petitioner's plea, namely the events that occurred at the hearing on December 14, 2001, the motion was never explicitly ruled on by the court.  Id., pp.130-32, 134.

Petitioner proceeded to a jury trial, and on July 11, 2002, he was found guilty as charged.[2] On July 30, 2002, he was sentenced to 120 to 240 months of incarceration (10 to 20 years), plus payment of restitution and costs. (Resp't Exh. 4, ECF No. 24, pp.68-70); (Resp't Exh. 5, ECF No. 24, pp.72-108.) On August 12, 2002, Petitioner filed a post-sentence Motion For A New Trial And In Arrest Of Judgment and a Motion To Modify Sentence, both of which the trial court denied on October 15, 2002. (Resp't Exh. 1, ECF No. 24, pp.14-25.)

Petitioner appealed his judgment of sentence, and, on July 30, 2003, after concluding that the trial judge erred in rejecting Petitioner's plea of guilty but mentally ill, the Superior Court of Pennsylvania vacated Petitioner's judgment of sentence and remanded for a new trial, prior to which Petitioner could seek to enter a plea if he so desired. (Resp't Exh. 6, ECF No. 24, pp.110-23.) A Petition for Allowance of Appeal ("PAA") from the order of the Superior Court was filed by the Commonwealth of Pennsylvania, and, on March 3, 2004, the PAA was granted. (Resp't Exh. 7, ECF No. 24, p.125.) On August 15, 2005, after concluding that the Superior Court misapprehended the issue before it, which was whether the trial court abused its discretion in not granting Petitioner's motion to reinstate his plea – by failing to rule on it – *after* he became competent to stand trial, the Supreme Court of Pennsylvania vacated the Superior Court's order and remanded the case to that court for further proceedings. (Resp't Exh. 8, ECF No. 24, pp.127-35.) On December 5, 2005, the Superior Court remanded the matter back to the trial court to hold a hearing and rule on Petitioner's motion to reinstate his guilty but mentally ill plea. (Resp't Exh. 9, ECF No. 24, pp.137-43.)

---

[2] At trial, Petitioner contended insanity or, in the alternative, mental illness, and the jury was instructed on insanity and guilty but mentally ill. The jury, however, rejected these defenses and found Petitioner guilty.

On August 4, 2006, Petitioner entered a general plea of guilty but mentally ill to the charges. (Resp't Exh. 10, ECF No. 24-1, pp.2-34.) On the same day, Petitioner was sentenced to 10 to 20 years of incarceration, plus payment of restitution and costs. (Resp't Exh. 11, ECF No. 24-1, pp.36-40.) No timely post-sentence motion or appeal was filed by Petitioner. On August 23, 2007, however, the trial court granted Petitioner the right to file a *nunc pro tunc* appeal of the judgment of sentence to the Superior Court after consideration of Petitioner's Amended Post Conviction Relief Act ("PCRA") Petition filed on June 26, 2007. (Resp't Exh. 12, ECF No. 24-1, p.42.) On September 21, 2007, Petitioner filed an appeal *nunc pro tunc* to the Superior Court of Pennsylvania, wherein he claimed that the trial court manifestly abused its discretion by imposing a sentence outside of all guidelines when Petitioner was, *inter alia*, severely mentally ill. (Resp't Exh. 13, ECF No. 24-1, pp. 44-46); (Resp't Exh. 14, ECF No. 24-1, pp.48-54.) The Superior Court affirmed Petitioner's judgment of sentence on August 27, 2008. Commonwealth v. Kontaxes, 961 A.2d 1277 (Pa. Super. 2008) (Table). The Supreme Court of Pennsylvania denied Petitioner's PAA on July 9, 2009. Commonwealth v. Kontaxes, 981 A.2d 218 (Pa. 2009) (Table). Petitioner did not seek further review in the United States Supreme Court.

On October 29, 2009, Petitioner filed his first *pro se* PCRA Petition, which the PCRA court dismissed on November 18, 2009. *See* (Resp't Exh. 18, ECF No. 24-1, p.95.) Petitioner filed a second *pro se* PCRA Petition on May 7, 2010, which the PCRA court dismissed on May 25, 2010. *See* (Resp't Exh. 18, ECF No. 24-1, p.96.) Petitioner appealed, and, on November 22, 2010, the Superior Court dismissed the appeal for Petitioner's failure to file a brief. Commonwealth v. Kontaxes, 994 WDA 2010 (Pa. Super. Ct). Petitioner filed a third *pro se* PCRA Petition on December 13, 2011, which the PCRA court dismissed on December 15,

4

2011.[3]  *See* (Resp't Exh. 18, ECF No. 24-1, p.101.)  Petitioner filed a fourth *pro se* PCRA Petition on September 16, 2015, which the PCRA court dismissed as untimely on October 20, 2015.  *See* (Resp't Exh. 18, ECF No. 24-1, p.105); *see also* (Resp't Exh. 16, ECF No. 24-1, pp.62-66.)  Petitioner appealed, and, on July 6, 2016, the Superior Court affirmed the PCRA court's dismissal.  (Resp't Exh. 16, ECF No. 24-1, pp.62-66.)  Petitioner filed a PAA that the Supreme Court of Pennsylvania denied on December 7, 2016.  (Resp't Exh. 17, ECF No. 24-1, p.68.)

Petitioner initiated the instant habeas proceedings on May 9, 2019.[4]  (ECF No. 1.)  His Petition was docketed on September 23, 2019.  (ECF No. 14.)  Respondents filed their Answer to the Petition on December 2, 2019.  (ECF No. 24.)  Petitioner filed a Response on May 26, 2020.  (ECF No. 32.)

### B. Factual Summary

The underlying facts of this matter, as summarized by the Superior Court, are as follows:

> On the evening of January 7, 2001, as Appellant returned to the home of his parents, Mary, age 73, and Steve, age 79, he crashed his car into his father's truck, which was parked in the driveway.  After spending a short time in the house, Appellant attempted to return to his car.  Appellant's parents, however, urged him not to drive because he was intoxicated.  Thereafter, Appellant and his father became involved in a verbal altercation, at which time his father threatened to call the police.  Appellant then violently beat both his mother and father with several rifles that were in their home.  As a result of the attack, Appellant's father suffered, *inter alia*, injuries to his head, arm, hand, and side, and was rendered blind in his left eye and without the use of his left arm or hand.  Appellant's mother sustained bruised ribs.

(Resp't Exh. 6, ECF No. 24, pp.110-11.)

---

[3] Respondents incorrectly state that Petitioner appealed the dismissal of his third PCRA petition and that the Superior Court dismissed the appeal for his failure to file a brief on October 16, 2012.  It appears that the appeal they reference in their Answer, which was filed at 810 WDA 2012, is for the denial of Petitioner's *pro se* Motion for Modification of Sentence and Fine Reduction that the trial court denied on April 25, 2012.

[4] This is the filing date pursuant to the prison mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988).

## C. Discussion

Petitioner raises two claims in his Petition. First, he argues that his trial counsel was ineffective by failing to transfer his case to mental health court. Second, he argues that he was legally incompetent to stand trial or to enter a plea and legally incompetent to proceed with the appeals process in his case.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

Here, it appears that the "trigger date" for Petitioner's two claims is the date on which his judgment of sentence became final, which in this case was October 7, 2009, which was the last day Petitioner had to seek review in the United States Supreme Court after the Pennsylvania Supreme Court denied his PAA on July 9, 2009. *See* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes "final" at the conclusion of direct review or the expiration of time for seeking such review). Thus, the first day of Petitioner's one-year statute of limitations period was October 8, 2009, and, absent any tolling for "properly filed" applications for post-conviction relief, Petitioner had until October 8, 2010, to file a timely federal habeas petition challenging his judgment of sentence. As previously noted, however, Petitioner did not file his Petition in this case until May 9, 2019, over eight-and-a-half years later. Accordingly, the Court must next determine whether Petitioner can take advantage of the tolling provision in section 2244(d)(2).

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. As previously noted, Petitioner

filed four *pro se* PCRA petitions. While the record does not reflect why the first three PCRA petitions were dismissed,[5] the Superior Court determined that Petitioner's fourth and final PCRA petition was untimely filed. Accordingly, that petition was not "properly filed" and Petitioner's statute of limitations under the AEDPA was not tolled during the time it was pending in the state courts, from September 16, 2015 to December 7, 2016. *See* Pace v. DiGuglielmo, 544 U.S. 408, 414, 417 (2005) (a federal court is bound by a state court's finding that a petitioner's PCRA petition was untimely, even where the petitioner sought to pursue his PCRA petition under a statutory exception to the PCRA's time bar, and an untimely PCRA petition is not "properly filed" and does not toll AEDPA's statute of limitations). However, even assuming, without deciding, that the first three *pro se* PCRA petitions were "properly filed" within the meaning of section 2244(d)(2) such that Petitioner would be entitled to statutory tolling during the time they were pending in state court, and assuming that Petitioner was entitled to tolling from the date he filed his first PCRA petition on October 29, 2009, until the final date he had to appeal the dismissal of his third PCRA petition, January 16, 2012,[6] the Petition in this case was still untimely filed by over six years.

Having failed to meet AEDPA's one-year statute of limitations, the Petition can only be saved by the application of equitable tolling or the Supreme Court's recognized fundamental miscarriage of justice exception. *See* Holland v. Florida, 560 U.S. 631 (2010); *see also* McQuggin v. Perkins, 569 U.S. 383 (2013). Petitioner, however, has argued for the applicability of neither. As such, the Petition will be dismissed since it was untimely filed.

---

[5] The orders dismissing these petitions were not provided to the Court.

[6] The Court recognizes that Petitioner would not have been entitled to tolling during the entirety of this time as there were periods of time where no PCRA petition was "pending" in the state courts.

## D. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in this case. Accordingly, a certificate of appealability will be denied. A separate order will issue.

Dated: March 11, 2021.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Gregory S. Kontaxes
      FB-3371
      SCI Waymart
      P.O. Box 256, Route #6
      Waymart, PA  18472

      Counsel of Record
      (*via CM/ECF electronic mail*)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY S. KONTAXES,       ) | |
| ) | Civil Action No. 19 – 568 |
| Petitioner,       ) | |
| ) | |
| v.       ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| MARK GARMAN, THE ATTORNEY    ) | |
| GENERAL OF THE STATE OF       ) | |
| PENNSYLVANIA and FAYETTE    ) | |
| COUNTY DISTRICT ATTORNEY,   ) | |
| ) | |
| Respondents.       ) | |

## ORDER

**AND NOW**, this 11th day of March, 2021, and for the reasons set forth in this Court's Memorandum Opinion accompanying this Order,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 14) is **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Judgment shall be entered in favor of Respondents.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Gregory S. Kontaxes
FB-3371
SCI Waymart
P.O. Box 256, Route #6
Waymart, PA  18472

Counsel of Record
(*via CM/ECF electronic mail*)